IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. YARNS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ANDY LEE YARNS, APPELLANT.

Filed October 6, 2020.    No. A-20-138.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

Following a jury trial, Andy Lee Yarns was convicted of two counts of third degree sexual assault of a child. The Hall County District Court subsequently sentenced him to concurrent terms of 30 months' imprisonment, followed by 18 months' postrelease supervision. Yarns appeals his convictions and sentences. We affirm.

## BACKGROUND

Yarns was alleged to have sexually assaulted his stepdaughter when she was 11 or 12 years old.

In its initial information, the State charged Yarns with two counts of first degree sexual assault of a child, Class IB felonies, pursuant to Neb. Rev. Stat. § 28-319.01 (Reissue 2016). The State later amended the information and charged Yarns with two counts of third degree sexual assault of a child, Class IIIA felonies, pursuant to Neb. Rev. Stat. § 28-320.01 (Reissue 2016); and

one count of attempted first degree sexual assault of a child, a Class II felony, pursuant to Neb. Rev. Stat. §§ 28-201 and 28-319.01 (Reissue 2016).

A jury trial was held in December 2019. The evidence at trial consisted solely of witness testimony; no exhibits were offered or received into evidence.

A.E. testified that she was born in 2005 and was 14 years old at the time of trial. A.E. lived with Yarns "most of [her] life" as he was married to her mother. Her mother and Yarns also had a child together, A.E.'s younger sister.

When A.E. lived with Yarns, they "were pretty close" and he was "like [her] dad." A.E. had her own room in the family's home, but she and her sister would "sometimes" sleep in her mother and Yarns' bed when their mother was at meetings. Her mother would get home "[p]retty late," would "see us sleeping" and "would just go to the couch and sleep."

N.Y., A.E.'s mother, confirmed that starting in 2015 she had regular work meetings in the evenings and when she got home A.E. and her sister would "[s]ometimes" already be in bed. N.Y. testified that her younger daughter usually slept with Yarns, but "[t]here were times where both of the girls were in there." If both girls were in bed with Yarns, N.Y. would sleep on the couch. There were no rules about where the girls could and could not sleep.

A.E. testified that when she was "[e]ither 11 or 12," Yarns "touch[ed] her sexually" while A.E. "pretend[ed] to be asleep." She said this happened three times. The first time it happened, Yarns touched her "[o]n [her] boobs or [her] vagina" underneath her clothes and it lasted for a "[c]ouple hours." He put his finger in her vagina and "would move his fingers around." A.E. tried to roll over, but he turned her back around. The incident stopped when Yarns' alarm clock went off.

The second time it happened, Yarns "touch[ed] [her] boobs and put his finger in [her] vagina." He also made her touch his "wiener" by "grab[bing]" her hand and making her "rub it up and down." A.E. pretended to be asleep the entire time. She also tried to roll over, but he turned her back around. The incident stopped when Yarns' alarm clock went off.

The third time it happened, the "same thing" occurred. Yarns "touch[ed] [her] boobs and put his fingers in [her] vagina," and made her touch his "wiener." A.E. pretended to be asleep the entire time. She also tried to roll over, but he turned her back around. The incident stopped when Yarns' alarm clock went off.

A.E. testified that Yarns tried to put his penis in her mouth, but she could not remember during which of the three incidents described above that happened. A.E.'s younger sister did not wake up during the incidents.

A.E. eventually told her cousin and a school counselor what had happened with Yarns because she thought Yarns might do the same thing to her sister.

On cross-examination, A.E. confirmed that her statements to a police officer that Yarns had assaulted her between 10 and 12 times were not true. She also confirmed that her statements to an interviewer at the Child Advocacy Center (CAC) that she had been assaulted three to five times were not entirely true; she had been assaulted three times, but not more. When asked why she reported being assaulted more times than she actually was, A.E. responded, "because I was being assaulted by someone else, too, so it just kind of confused me." After thinking about it, A.E. realized that Yarns "only did it" three times.

A.E. was confronted with her deposition testimony, which was not received into evidence, wherein she said that Yarns never put his fingers inside of her vagina; she acknowledged that she was saying something different at trial. A.E. was also asked if she told the CAC interviewer that Yarns put his penis in her mouth, and A.E. responded, "Yes." When Yarns' counsel said, "And that wasn't true, was it?" A.E. replied, "Yes, it was, because there was one -- two times where he did and one time where he just would put it on my lips."

A.E. also confirmed she was previously interviewed at the CAC for something that happened when she was 13 years old that was unrelated to Yarns. During that interview, the CAC interviewer asked A.E. if she had been assaulted by anybody else and A.E. responded in the negative. On redirect and recross, A.E. stated that Yarns was present at the CAC, but in a different room, during that previous CAC interview.

N.Y. testified that she and Yarns, born in 1988, "got together" in 2011, started living together after dating for 3 months, and then got married in 2015. Although N.Y. moved out "several different times" during their relationship, she moved out for the final time in January 2018, but A.E. and her sister continued to have parenting time with Yarns. N.Y. and Yarns were separated and going through a divorce at the time of trial. When N.Y. and Yarns were still together, she thought A.E. and Yarns had a "really good bond and connection." N.Y. was not aware of any allegations against Yarns until October 2018. N.Y. acknowledged that A.E. told her she could not remember clearly what happened, but N.Y. said the last time A.E. said that was "[p]robably around the time of the deposition."

Investigator Travis Sturgill from the Hall County Sheriff's office received this case in October 2018. He arranged for A.E. to be interviewed at the CAC, and he was able to observe that interview. Investigator Sturgill later interviewed Yarns. During his interview, Yarns said that A.E. was never allowed to sleep in his bed because she sometimes wet the bed. Yarns also said he did not know where A.E. was coming up with her story. He denied her allegations in their entirety.

Yarns testified that he treated A.E. like she was his own daughter. His younger daughter had slept in bed with him every night since she was born. There were "[m]aybe a handful of times" when A.E. would also sleep in bed with him and his younger daughter, as long as A.E. was wearing a pull-up or a diaper so as to not wet the bed; but A.E. "usually never stayed in bed all night" because Yarns would eventually "move her to her own bed." Yarns said there was never a rule that A.E. was not allowed in his bed, but he told Investigator Sturgill that he did not like A.E. sleeping in his bed because she wet the bed. Yarns denied ever touching A.E. on her breasts or vagina and he also denied ever putting his penis in A.E.'s mouth. Yarns stated, "I have never touched [A.E.] in a sexual or unbecoming manner." And he agreed that he would have no reason to put his hand in A.E.'s clothing.

The jury found Yarns guilty of the two counts of third degree sexual assault of a child. However, the jury found Yarns not guilty of attempted first degree sexual assault of a child. The district court entered judgment on the verdict. The court later overruled Yarns' motion for new trial, which alleged that the convictions were not sustained by sufficient evidence. Yarns was subsequently sentenced to concurrent terms of 30 months' imprisonment, followed by 18 months' postrelease supervision.

Yarns appeals.

## ASSIGNMENTS OF ERROR

Yarns assigns, reordered, that (1) there was insufficient evident to sustain his convictions, (2) the district court abused its discretion in denying his motion for new trial, and (3) the district court imposed excessive sentences.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*.

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

Yarns contends the evidence adduced at trial was not sufficient to support his convictions. He argues, "The evidence was such that . . . any rational jury could have found [him] guilty on all three counts for which he was charged or not guilty on all counts for which he was charged, but not a split verdict." Brief for appellant at 14. He contends that he and A.E. were the only two witnesses to testify that had direct evidence, and A.E. testified that she was assaulted and he testified that it did not occur. Therefore, "A rational factfinder had only two potential outcomes-believe the testimony of A.E. and convict [him] [on] all three counts charged or believe [his] testimony . . . and acquit [him] on all three charges," but "[a] rational factfinder could not have heard the evidence, believed the testimony of A.E. and not convicted [him] on all three of the counts." *Id*. at 16. As noted by the State, "Yarns seemingly suggests that a jury cannot believe some parts of the victim's testimony about the assaults he committed on the victim unless it believes all of the victim's testimony." Brief for appellee at 17.

However, in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Price, supra*. When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Section 28-320.01 provides, in relevant part:

> (1) A person commits sexual assault of a child in the . . . third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.
>
> . . . .
>
> (3) Sexual assault of a child is in the third degree if the actor does not cause serious personal injury to the victim.

At all times relevant to this case, Neb. Rev. Stat. § 28-318(5) (Reissue 2016) stated,

> Sexual contact means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party. Sexual contact shall also include the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child under sections 28-319.01 and 28-320.01.

According to the testimony at trial, A.E. was born in 2005, and was 14 years old at the time of trial. Thus, she would necessarily have been 14 years of age or younger at the time of the sexual assaults. Furthermore, she testified that the sexual assaults happened when she was 11 or 12 years old. N.Y. testified that Yarns was born in 1988. Thus he would have been "at least 19 years old or older," see § 28-320.01, at the time of the sexual assaults.

A.E.'s testimony was that Yarns touched "her boobs" and her vagina on three occasions, and when she tried to roll over, he would turn her back around. On two of those occasions he also made her touch his "wiener" by "grab[bing]" her hand and making her "rub it up and down." All of those actions come within the definition of sexual contact pursuant to § 28-318(5).

Viewing the evidence in the light most favorable to the State, the jury could have found that Yarns subjected A.E. to sexual contact on two separate occasions when she was 14 years of age or younger and he was at least 19 years of age or older. Accordingly, there was sufficient evidence to support Yarns' convictions of two counts of third degree sexual assault of a child.

That the jury did not also convict Yarns of attempted first degree sexual assault of a child is of no consequence in determining whether there was sufficient evidence to convict him of third degree sexual assault of a child. The two crimes involve different elements. Compare § 28-319.01 (first degree sexual assault of child involves sexual penetration when child is under 12 years of age and actor is at least 19 years of age, or when victim is at least 12 years of age but less than 16 years of age and actor is 25 years of age or older) *with* § 28-320.01 (third degree sexual assault of child involves sexual contact when child is 14 years of age or younger and actor is at least 19 years of age). The jury had a duty to weigh the evidence as to each charged count and render a verdict accordingly. While the jury apparently believed A.E.'s testimony related to sexual contact, it did not necessarily have to believe there were acts of penetration.

MOTION FOR NEW TRIAL

Yarns assertion that the district court abused its discretion by denying his motion for new trial was based on his claim that there was insufficient evidence to support the convictions. We have already found there was sufficient evidence to support Yarns' convictions. Accordingly, we find the district court did not abuse its discretion by denying Yarns' motion for new trial.

EXCESSIVE SENTENCE

Yarns was convicted of two counts of third degree sexual assault of a child, which are Class IIIA felonies for a first offense. See § 28-320.01(3). A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both; there is no minimum term for imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Yarns was sentenced to concurrent terms of 30 months' imprisonment, followed by 18 months' postrelease supervision. Yarns' sentences were within the statutory range. Although Yarns does not dispute that his sentences were within the sentencing range, he nevertheless argues that the district court abused its discretion by not sentencing him to a term of probation instead of imprisonment.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Yarns was 32 years old at the time of sentencing. According to the presentence report, Yarns was separated from A.E.'s mother and was going through a divorce; they have one child together. He was in a relationship and living with his girlfriend. He had completed high school and was employed. Yarns had been diagnosed with "PTSD," depression, and anxiety. His adult criminal history includes a 2018 conviction for driving under the influence, first offense, for which he received 6 months' probation, a $500 fine, and had his license revoked for 60 days. His adult history also includes fines for traffic violations. The nature of the current offenses has been set forth previously.

The probation officer conducted a "Level of Service/Case Management Inventory." Yarns was assessed as an overall "medium high" risk to reoffend. He scored "[h]igh [r]isk" in the criminogenic risk factor domains for family/marital, leisure/recreation, procriminal attitude/orientation, and antisocial pattern. He scored "[m]edium [r]isk" in the domain for criminal history. He scored "[l]ow [r]isk" in the domains for companions and alcohol/drug problem. And he scored "[v]ery [l]ow [r]isk" in the domain for education/employment. On the "Vermont Assessment of Sex Offender Risk-2," Yarns scored at a "[l]ow risk." And on the "Sex Offender Treatment Intervention and Progress Scale," Yarns scored at a "[m]oderate risk."

At the sentencing hearing, the State argued that Yarns' actions had a big effect on a family that trusted him, and that A.E. suffered anxiety because of the sexual assaults and had gone through trust issues. The State requested "some amount of jail time," even if the district court chose to place Yarns on probation.

Yarns' counsel provided the district court with letters written on Yarns' behalf by various friends and family members; those letters were made part of the presentence report (PSR). Counsel also noted information in the PSR which Yarns disputed, including that a protection order was in effect when it had actually expired. Counsel stated that Yarns maintained his innocence which "probably had some effect" on the scores in the PSR. In his request for a term of probation, counsel pointed out Yarns' minimal criminal history, his financial support obligation for his daughter, and his age.

Yarns personally addressed the district court and stated, "It's been extremely hard on my family too. . . . We have a lot going on. My mom has Stage IV cancer, not doing so well. I provide a lot of care for her, and for me not to be there would be hard on her too."

The district court stated that it had reviewed the PSR, including the letters provided at the hearing, and it had considered the relevant sentencing factors. The court, in addressing Yarns, stated, "I can understand you maintaining your innocence, but that does not take away that you were convicted by a jury of 12 peers." The court noted that Yarns would always have a relationship with the family of the victim in this case because of his younger daughter, and "[t]hat's something the Court has considered in developing a sentence in this matter." The court also noted that Yarns' mental health issues are "similar mental health issues now that the victim goes through," and "[s]omething she's going to live with for the rest of her life." The "big concern" for the court was "what this charge is, what the facts are, what happened, what this Court heard, and what the jury decided." The court said it was not going to consider Yarns for probation.

Pursuant to Neb. Rev. Stat. § 29-2260 (Reissue 2016), the district court found the following substantial and compelling reasons why Yarns could not effectively and safely be supervised in the community on probation: a lesser sentence would depreciate the seriousness of the crime; a lesser sentence would promote disrespect for the law; incarceration was necessary to protect the security of the public; the crime caused or threatened serious harm; there was no reason to excuse or justify the offense; and the victim did not induce or facilitate the crime. Having found that Yarns was "not a fit candidate for probation," it sentenced Yarns as set forth previously.

In his brief, Yarns contends his sentences were an abuse of discretion and points to his young age, limited criminal history, mental health issues, and the care he provides to his mother. He "requests that the matter be remanded to the District Court with instructions to modify [his] sentence to a term of probation." Brief for appellant at 19. According to the State, "Yarns essentially requests that this court conduct a de novo review of the record and the sentences ordered for him, which need not be done." Brief for appellee at 20. The State contends that the district court already considered the appropriate sentencing factors, including Yarns' particular circumstances, and that the sentences ordered were not an abuse of discretion.

Having considered the relevant factors in this case, we find Yarns' sentences are not excessive or an abuse of discretion and his sentences are therefore affirmed. See *State v. Price, supra* (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## CONCLUSION

For the reasons stated above, we affirm Yarns' convictions and sentences.

AFFIRMED.